MEMPHIS COMMUNITY SCHOOL DISTRICT ET AL. *v.*
STACHURA

No. 85–410.   Argued April 2, 1986—Decided June 25, 1986

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BRENNAN and STEVENS, JJ., filed a separate statement, *post*, p. 313. MARSHALL, J., filed an opinion concurring in the judgment, in which BRENNAN, BLACKMUN, and STEVENS, JJ., joined, *post*, p. 313.

*Patrick J. Berardo* argued the cause and filed briefs for petitioners.

*Jeffrey A. Heldt* argued the cause for respondent. With him on the brief was *Erwin B. Ellmann.**

JUSTICE POWELL delivered the opinion of the Court.

This case requires us to decide whether 42 U. S. C. § 1983 authorizes an award of compensatory damages based on the factfinder's assessment of the value or importance of a substantive constitutional right.

## I

Respondent Edward Stachura is a tenured teacher in the Memphis, Michigan, public schools. When the events that led to this case occurred, respondent taught seventh-grade life science, using a textbook that had been approved by the School Board. The textbook included a chapter on human reproduction. During the 1978–1979 school year, respondent spent six weeks on this chapter. As part of their instruction, students were shown pictures of respondent's wife dur-

---

*Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Geller, Bruce N. Kuhlik,* and *Barbard L. Herwig* filed a brief for the United States as *amicus curiae* urging reversal.

*Charles S. Sims* and *Stuart H. Singer* filed a brief for the American Civil Liberties Union as *amicus curiae* urging affirmance.

*Gwendolyn H. Gregory, August W. Steinhilber,* and *Thomas A. Shannon* filed a brief for the National School Boards Association as *amicus curiae.*

ing her pregnancy. Respondent also showed the students two films concerning human growth and sexuality. These films were provided by the County Health Department, and the Principal of respondent's school had approved their use. Both films had been shown in past school years without incident.

After the showing of the pictures and the films, a number of parents complained to school officials about respondent's teaching methods. These complaints, which appear to have been based largely on inaccurate rumors about the allegedly sexually explicit nature of the pictures and films, were discussed at an open School Board meeting held on April 23, 1979. Following the advice of the School Superintendent, respondent did not attend the meeting, during which a number of parents expressed the view that respondent should not be allowed to teach in the Memphis school system.[1] The day after the meeting, respondent was suspended with pay. The School Board later confirmed the suspension, and notified respondent that an "administration evaluation" of his teaching methods was underway. No such evaluation was ever made. Respondent was reinstated the next fall, after filing this lawsuit.

Respondent sued the School District, the Board of Education, various Board members and school administrators, and two parents who had participated in the April 23 School Board meeting. The complaint alleged that respondent's suspension deprived him of both liberty and property without due process of law and violated his First Amendment right to

---

[1] One member of the School Board described the meeting as follows:

"At this time, the public was in a total uproar and completely out of control. . . . People were hollering and shouting and the statement was made from the public that if Mr. Stachura was allowed to return in the morning, they would be there to picket the school.

"At this point of total panic, [the School Superintendent] stated in order to maintain peace in our school district, we would suspend Mr. Stachura with full pay and get this mess straightened out." Tr. 583–584, quoted in *Stachura* v. *Truszkowski*, 763 F. 2d 211, 214 (CA6 1985).

academic freedom. Respondent sought compensatory and punitive damages under 42 U. S. C. § 1983 for these constitutional violations.

At the close of trial on these claims, the District Court instructed the jury as to the law governing the asserted bases for liability. Turning to damages, the court instructed the jury that on finding liability it should award a sufficient amount to compensate respondent for the injury caused by petitioners' unlawful actions:

> "You should consider in this regard any lost earnings; loss of earning capacity; out-of-pocket expenses; and any mental anguish or emotional distress that you find the Plaintiff to have suffered as a result of conduct by the Defendants depriving him of his civil rights." App. 94.

In addition to this instruction on the standard elements of compensatory damages, the court explained that punitive damages could be awarded, and described the standards governing punitive awards.[2] Finally, at respondent's request and over petitioners' objection, the court charged that damages also could be awarded based on the value or importance of the constitutional rights that were violated:

> "If you find that the Plaintiff has been deprived of a Constitutional right, you may award damages to compensate him for the deprivation. Damages for this type of injury are more difficult to measure than damages for a physical injury or injury to one's property. There are no medical bills or other expenses by which you can judge how much compensation is appropriate. In one sense, no monetary value we place upon Constitutional rights can measure their importance in our society or compensate a citizen adequately for their deprivation. However, just because these rights are not capable of

---

[2] Petitioners do not challenge the award of punitive damages in this Court.

precise evaluation does not mean that an appropriate monetary amount should not be awarded.

"The precise value you place upon any Constitutional right which you find was denied to Plaintiff is within your discretion. You may wish to consider the importance of the right in our system of government, the role which this right has played in the history of our republic, [and] the significance of the right in the context of the activities which the Plaintiff was engaged in at the time of the violation of the right." *Id.*, at 96.

The jury found petitioners liable,[3] and awarded a total of $275,000 in compensatory damages and $46,000 in punitive damages.[4] The District Court entered judgment notwithstanding the verdict as to one of the defendants, reducing the total award to $266,750 in compensatory damages and $36,000 in punitive damages.

In an opinion devoted primarily to liability issues, the Court of Appeals for the Sixth Circuit affirmed, holding that respondent's suspension had violated both procedural due process and the First Amendment. *Stachura* v. *Truszkowski*, 763 F. 2d 211 (1985). Responding to petitioners' contention that the District Court improperly authorized damages based solely on the value of constitutional rights, the court noted only that "there was ample proof of actual injury to plaintiff Stachura both in his effective discharge . . . and by the damage to his reputation and to his professional career as a teacher. Contrary to the situation in *Carey* v. *Piphus*, 435 U. S. 247 (1978) . . . , there was proof from which the jury

---

[3] The jury found petitioners liable based both on the alleged deprivation of procedural due process and on the alleged violation of respondent's First Amendment rights.

[4] The bulk of the award was against the School Board, which was assessed $233,750 in compensatory damages. Three of the individual defendants were each assessed $8,250, while six others were each charged $2,750. Nine individual defendants were assessed punitive damages, ranging from $1,000 to $15,000.

could have found, as it did, actual and important damages." *Id.*, at 214.

We granted certiorari limited to the question whether the Court of Appeals erred in affirming the damages award in the light of the District Court's instructions that authorized not only compensatory and punitive damages, but also damages for the deprivation of "any constitutional right."[5]  474 U. S. 918 (1985).  We reverse, and remand for a new trial limited to the issue of compensatory damages.

## II

Petitioners challenge the jury instructions authorizing damages for violation of constitutional rights on the ground that those instructions permitted the jury to award damages based on its own unguided estimation of the value of such rights.[6]  Respondent disagrees with this characterization of

---

[5] Since our decision in *Carey* v. *Piphus,* 435 U. S. 247 (1978), several of the Courts of Appeals have concluded that damages awards based on the abstract value of constitutional rights are proper, at least as long as the right in question is substantive. *E. g., Bell* v. *Little Axe Independent School Dist. No. 70,* 766 F. 2d 1391 (CA10 1985); *Herrera* v. *Valentine,* 653 F. 2d 1220, 1227–1229 (CA8 1981); *Konczak* v. *Tyrrell,* 603 F. 2d 13, 17 (CA7 1979) (dicta), cert. denied, 444 U. S. 1016 (1980).  See also Love, Damages: A Remedy for the Violation of Constitutional Rights, 67 Calif. L. Rev. 1242 (1979).  Other courts have determined that our reasoning in *Carey* forecloses such awards. *E. g., Hobson* v. *Wilson,* 237 U. S. App. D. C. 219, 278–279, 737 F. 2d 1, 60–61 (1984), cert. denied, 470 U. S. 1084 (1985); *Familias Unidas* v. *Briscoe,* 619 F. 2d 391, 402 (CA5 1980); *Davis* v. *Village Park II Realty Co.,* 578 F. 2d 461, 463 (CA2 1978).  Cf. *Freeman* v. *Franzen,* 695 F. 2d 485, 492–494 (CA7 1982), cert. denied, 463 U. S. 1214 (1983).

[6] Respondent argues that petitioners did not preserve their challenge to the jury instructions below.  Petitioners' counsel expressly objected to the authorization of damages based on the value of constitutional rights, on the ground that such damages were impermissible under *Carey* v. *Piphus, supra,* and on the ground that they required the jury to "speculate as to what the value of the Constitutional right is." App. 97–98.  The District Court responded by stating that it relied on *Herrera* v. *Valentine, supra,* at 1227, and on *Corriz* v. *Naranjo,* 667 F. 2d 892 (CA10), cert. dism'd, 458 U. S. 1123 (1982).  App. 98.  Both of those cases held that jury instruc-

the jury instructions, contending that the compensatory damages instructions taken as a whole focused solely on respondent's injury and not on the abstract value of the rights he asserted.

We believe petitioners more accurately characterize the instructions. The damages instructions were divided into three distinct segments: (i) compensatory damages for harm to respondent, (ii) punitive damages, and (iii) additional "compensat[ory]" damages for violations of constitutional rights. No sensible juror could read the third of these segments to modify the first.[7] On the contrary, the damages instructions plainly authorized—in addition to punitive damages—two distinct types of "compensatory" damages: one based on respondent's actual injury according to ordinary tort law standards, and another based on the "value" of certain rights. We therefore consider whether the latter category of damages was properly before the jury.

## III

### A

We have repeatedly noted that 42 U. S. C. § 1983[8] creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them

---

tions similar to those used here were permissible under *Carey*. This exchange satisfies us that counsel for petitioners "stat[ed] distinctly the matter to which he object[ed] and the grounds of his objection," Fed. Rule Civ. Proc. 51, and that the District Court understood the objection.

[7] The jurors were given written copies of the instructions for use in their deliberations. App. 96.

[8] Section 1983 reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

by the Constitution." *Carey* v. *Piphus*, 435 U. S. 247, 253 (1978), quoting *Imbler* v. *Pachtman*, 424 U. S. 409, 417 (1976). See also *Smith* v. *Wade*, 461 U. S. 30, 34 (1983); *Newport* v. *Fact Concerts, Inc.*, 453 U. S. 247, 258–259 (1981). Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts. See *Smith* v. *Wade, supra,* at 34; *Carey* v. *Piphus, supra,* at 257–258; cf. *Monroe* v. *Pape*, 365 U. S. 167, 196, and n. 5 (1961) (Harlan, J., concurring).

Punitive damages aside,[9] damages in tort cases are designed to provide *"compensation* for the injury caused to plaintiff by defendant's breach of duty." 2 F. Harper, F. James, & O. Gray, Law of Torts § 25.1, p. 490 (2d ed. 1986) (emphasis in original), quoted in *Carey* v. *Piphus, supra,* at 255. See also *Bivens* v. *Six Unknown Federal Narcotics Agents*, 403 U. S. 388, 395, 397 (1971); *id.,* at 408–409 (Har-

---

[9] The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior. *E. g.,* Restatement (Second) of Torts § 908(1) (1979); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 9 (5th ed. 1984); C. McCormick, Law of Damages 275 (1935). See also *Electrical Workers* ·v. *Foust*, 442 U. S. 42, 48 (1979); *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 350 (1974). In *Smith* v. *Wade*, 461 U. S. 30 (1983), the Court held that punitive damages may be available in a proper § 1983 case. As the punitive damages instructions used in this case explained, however, such damages are available only on a showing of the requisite intent. App. 94–95 (authorizing punitive damages for acts "maliciously, or wantonly, or oppressively done"); *Smith* v. *Wade, supra,* at 51.

Respondent does not, and could not reasonably, contend that the separate instructions authorizing damages for violation of constitutional rights were equivalent to punitive damages instructions. In these separate instructions, the jury was authorized to find damages for constitutional violations without any finding of malice or ill will. Moreover, the jury instructions separately authorized punitive damages, and the District Court expressly labeled the "constitutional rights" damages compensatory. The instructions concerning damages for constitutional violations are thus impermissible unless they reasonably could be read as authorizing *compensatory* damages.

lan, J., concurring in judgment). To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as "impairment of reputation . . . , personal humiliation, and mental anguish and suffering." *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 350 (1974). See also *Carey* v. *Piphus, supra*, at 264 (mental and emotional distress constitute compensable injury in § 1983 cases). Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are *compensatory*—damages grounded in determinations of plaintiffs' actual losses. *E. g.*, 4 Harper, James, & Gray, *supra*, § 25.3 (discussing need for certainty in damages determinations); D. Dobbs, Law of Remedies § 3.1, pp. 135–136 (1973). Congress adopted this common-law system of recovery when it established liability for "constitutional torts."[10] Consequently, "the basic purpose" of § 1983 damages is "to *compensate persons for injuries* that are caused by the deprivation of constitutional rights." *Carey* v. *Piphus*, 435 U. S., at 254 (emphasis added). See also *id.*, at 257 ("damages awards under § 1983 should be governed by the principle of compensation").

*Carey* v. *Piphus* represents a straightforward application of these principles. *Carey* involved a suit by a high school student suspended for smoking marijuana; the student claimed that he was denied procedural due process because he was suspended without an opportunity to respond to the charges against him. The Court of Appeals for the Seventh Circuit held that even if the suspension was justified, the student could recover substantial compensatory damages simply because of the insufficient procedures used to suspend him from school. We reversed, and held that the student could recover compensatory damages only if he proved actual injury caused by the denial of his constitutional rights. *Id.*, at 264. We noted: "Rights, constitutional and otherwise, do

---

[10] See generally Whitman, Constitutional Torts, 79 Mich. L. Rev. 5 (1980).

not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests . . . ." *Id.*, at 254. Where no injury was present, no "compensatory" damages could be awarded.

The instructions at issue here cannot be squared with *Carey*, or with the principles of tort damages on which *Carey* and § 1983 are grounded. The jurors in this case were told that, in determining how much was necessary to "compensate [respondent] for the deprivation" of his constitutional rights, they should place a money value on the "rights" themselves by considering such factors as the particular right's "importance . . . in our system of government," its role in American history, and its "significance . . . in the context of the activities" in which respondent was engaged. App. 96. These factors focus, not on compensation for provable injury, but on the jury's subjective perception of the importance of constitutional rights as an abstract matter. *Carey* establishes that such an approach is impermissible. The constitutional right transgressed in *Carey*—the right to due process of law—is central to our system of ordered liberty. See *In re Gault*, 387 U. S. 1, 20–21 (1967). We nevertheless held that *no* compensatory damages could be awarded for violation of that right absent proof of actual injury. *Carey*, 435 U. S., at 264. *Carey* thus makes clear that the abstract value of a constitutional right may not form the basis for § 1983 damages.[11]

---

[11] We did approve an award of nominal damages for the deprivation of due process in *Carey*. 435 U. S., at 266. Our discussion of that issue makes clear that nominal damages, and not damages based on some undefinable "value" of infringed rights, are the appropriate means of "vindicating" rights whose deprivation has not caused actual, provable injury:

"Common-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compen-

Respondent nevertheless argues that *Carey* does not control here, because in this case a *substantive* constitutional right—respondent's First Amendment right to academic freedom[12]—was infringed. The argument misperceives our analysis in *Carey*. That case does not establish a two-tiered system of constitutional rights, with substantive rights afforded greater protection than "mere" procedural safeguards. We did acknowledge in *Carey* that "the elements and prerequisites for recovery of damages" might vary depending on the interests protected by the constitutional right at issue. *Id.*, at 264–265. But we emphasized that, whatever the constitutional basis for § 1983 liability, such damages must always be designed "to *compensate injuries* caused by the [constitutional] deprivation." *Id.*, at 265 (emphasis added).[13] See also *Hobson* v. *Wilson*, 237 U. S. App. D. C. 219, 277–279, 737 F. 2d 1, 59–61 (1984), cert. denied, 470 U. S. 1084 (1985); cf. *Smith* v. *Wade*, 461 U. S. 30 (1983). That conclusion simply leaves no room for noncompensatory

---

sate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights." *Ibid.* (footnote omitted).

[12] Our grant of certiorari in this case does not encompass the question whether respondent stated or proved a claim under either the Due Process Clause or the First Amendment. We therefore treat the Court of Appeals' decision on all liability issues as final for purposes of our decision.

[13] *Carey* recognized that "the task . . . of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right" is one "of some delicacy." *Id.*, at 258. We also noted that "the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another." *Id.*, at 264–265. See also *Hobson* v. *Wilson*, 237 U. S. App. D. C., at 279–281, 737 F. 2d, at 61–63. This "delicate" task need not be undertaken here. None of the parties challenges the portion of the jury instructions that permitted recovery for actual harm to respondent, and the instructions that *are* challenged simply do not authorize compensation for injury. We therefore hold only that damages based on the "value" or "importance" of constitutional rights are not authorized by § 1983, because they are not truly compensatory.

damages measured by the jury's perception of the abstract "importance" of a constitutional right.

Nor do we find such damages necessary to vindicate the constitutional rights that § 1983 protects. See n. 11, *supra.* Section 1983 presupposes that damages that compensate for actual harm ordinarily suffice to deter constitutional violations. *Carey, supra,* at 256–257 ("To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages"). Moreover, damages based on the "value" of constitutional rights are an unwieldy tool for ensuring compliance with the Constitution. History and tradition do not afford any sound guidance concerning the precise value that juries should place on constitutional protections. Accordingly, were such damages available, juries would be free to award arbitrary amounts without any evidentiary basis, or to use their unbounded discretion to punish unpopular defendants. Cf. *Gertz,* 418 U. S., at 350. Such damages would be too uncertain to be of any great value to plaintiffs, and would inject caprice into determinations of damages in § 1983 cases. We therefore hold that damages based on the abstract "value" or "importance" of constitutional rights are not a permissible element of compensatory damages in such cases.

## B

Respondent further argues that the challenged instructions authorized a form of "presumed" damages—a remedy that is both compensatory in nature and traditionally part of the range of tort law remedies. Alternatively, respondent argues that the erroneous instructions were at worst harmless error.

Neither argument has merit. Presumed damages are a *substitute* for ordinary compensatory damages, not a *supplement* for an award that fully compensates the alleged injury. When a plaintiff seeks compensation for an injury that is

likely to have occurred but difficult to establish, some form
of presumed damages may possibly be appropriate. See
*Carey*, 435 U. S., at 262; cf. *Dun & Bradstreet, Inc.* v.
*Greenmoss Builders*, 472 U. S. 749, 760–761 (1985) (opinion
of POWELL, J.); *Gertz* v. *Robert Welch, Inc., supra*, at 349.
In those circumstances, presumed damages may roughly ap-
proximate the harm that the plaintiff suffered and thereby
compensate for harms that may be impossible to measure.
As we earlier explained, the instructions at issue in this case
did not serve this purpose, but instead called on the jury
to measure damages based on a subjective evaluation of
the importance of particular constitutional values. Since
such damages are wholly divorced from any compensatory
purpose, they cannot be justified as presumed damages.[14]

---

[14] For the same reason, *Nixon* v. *Herndon*, 273 U. S. 536 (1927), and
similar cases do not support the challenged instructions. In *Nixon*, the
Court held that a plaintiff who was illegally prevented from voting in
a state primary election suffered compensable injury. Accord, *Lane* v.
*Wilson*, 307 U. S. 268 (1939). This holding did not rest on the "value" of
the right to vote as an abstract matter; rather, the Court recognized that
the plaintiff had suffered a particular injury—his inability to vote in a par-
ticular election—that might be compensated through substantial money
damages. See 273 U. S., at 540 ("the petition . . . seeks to recover for
private damage").

*Nixon* followed a long line of cases, going back to Lord Holt's decision in
*Ashby* v. *White*, 2 Ld. Raym. 938, 92 Eng. Rep. 126 (1703), authorizing
substantial money damages as compensation for persons deprived of their
right to vote in particular elections. *E. g.*, *Wiley* v. *Sinkler*, 179 U. S. 58,
65 (1900); *Wayne* v. *Venable*, 260 F. 64, 66 (CA8 1919). Although these
decisions sometimes speak of damages for the value of the right to vote,
their analysis shows that they involve nothing more than an award of pre-
sumed damages for a nonmonetary harm that cannot easily be quantified:

"In the eyes of the law th[e] right [to vote] is so valuable that damages
are presumed from the wrongful deprivation of it without evidence of ac-
tual loss of money, property, or any other valuable thing, and the amount
of the damages is a question peculiarly appropriate for the determination of
the jury, because each member of the jury has personal knowledge of the
value of the right." *Ibid.*

See also *Ashby* v. *White, supra,* at 955, 92 Eng. Rep., at 137 (Holt, C. J.)
("As in an action for slanderous words, though a man does not lose a penny

Moreover, no rough substitute for compensatory damages was required in this case, since the jury was fully authorized to compensate respondent for both monetary and nonmonetary harms caused by petitioners' conduct.

Nor can we find that the erroneous instructions were harmless. See 28 U. S. C. § 2111; *McDonough Power Equipment, Inc.* v. *Greenwood,* 464 U. S. 548 (1984). When damages instructions are faulty and the verdict does not reveal the means by which the jury calculated damages, "[the] error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict." *Newport* v. *Fact Concerts, Inc.,* 453 U. S., at 256, n. 12. The jury was authorized to award three categories of damages: (i) compensatory damages for injury to respondent, (ii) punitive damages, and (iii) damages based on the jury's perception of the "importance" of two provisions of the Constitution. The submission of the third of these categories was error. Although the verdict specified an amount for punitive damages, it did not specify how much of the remaining damages was designed to compensate respondent for his injury and how much reflected the jury's estimation of the value of the constitutional rights that were infringed. The effect of the erroneous instruction is therefore unknowable, although probably significant: the jury awarded respondent a very substantial amount of damages, none of which could have derived from any monetary loss.[15] It is likely, although not certain, that a

---

by reason of the speaking [of] them, yet he shall have an action"). The "value of the right" in the context of these decisions is the money value of the particular loss that the plaintiff suffered—a loss of which "each member of the jury has personal knowledge." It is *not* the value of the right to vote as a general, abstract matter, based on its role in our history or system of government. Thus, whatever the wisdom of these decisions in the context of the changing scope of compensatory damages over the course of this century, they do not support awards of noncompensatory damages such as those authorized in this case.

[15] Throughout his suspension, respondent continued to receive his teacher's salary.

major part of these damages was intended to "compensate" respondent for the abstract "value" of his due process and First Amendment rights. For these reasons, the case must be remanded for a new trial on compensatory damages.

## IV

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN and JUSTICE STEVENS join the opinion of the Court and also join JUSTICE MARSHALL's opinion concurring in the judgment.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN, JUSTICE BLACKMUN, and JUSTICE STEVENS join, concurring in the judgment.

I agree with the Court that this case must be remanded for a new trial on damages. Certain portions of the Court's opinion, however, can be read to suggest that damages in § 1983 cases are necessarily limited to "out-of-pocket loss," "other monetary harms," and "such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" See *ante,* at 307. I do not understand the Court so to hold, and I write separately to emphasize that the violation of a constitutional right, in proper cases, may itself constitute a compensable injury.

The appropriate starting point of any analysis in this area is this Court's opinion in *Carey* v. *Piphus,* 435 U. S. 247 (1978). In *Carey,* we recognized that "the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Id.,* at 254; see *ante,* at 306–307. We explained, however, that application of that principle to concrete cases was not a

simple matter. 435 U. S., at 257. "It is not clear," we stated, "that common-law tort rules of damages will provide a complete solution to the damages issue in every § 1983 case." *Id.*, at 258. Rather, "the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in various branches of tort law." *Id.*, at 259.

Applying those principles, we held in *Carey* that substantial damages should not be awarded where a plaintiff has been denied procedural due process but has made no further showing of compensable damage. We repeated, however, that "the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another." *Id.*, at 264–265. We referred to cases that support the award of substantial damages simply upon a showing that a plaintiff was wrongfully deprived of the right to vote, without requiring any further demonstration of damages. *Id.*, at 264–265, n. 22.

Following *Carey*, the Courts of Appeals have recognized that invasions of constitutional rights sometimes cause injuries that cannot be redressed by a wooden application of common-law damages rules.* In *Hobson* v. *Wilson*, 237 U. S. App. D. C. 219, 275–281, 737 F. 2d 1, 57–63 (1984), cert. denied, 470 U. S. 1084 (1985), which the Court cites, *ante*, at 309, and n. 13, plaintiffs claimed that defendant Federal Bureau of Investigation agents had invaded their First

---

*See, *e.g.*, *Bell* v. *Little Axe Independent School District No. 70 of Cleveland Cty.*, 766 F. 2d 1391, 1408–1413 (CA10 1985); *Hobson* v. *Wilson*, 237 U. S. App. D. C. 219, 275–281, 737 F. 2d 1, 57–63 (1984), cert. denied, 470 U. S. 1084 (1985); *Kincaid* v. *Rusk*, 670 F. 2d 737, 745–746 (CA7 1982); *Mickens* v. *Winston*, 462 F. Supp. 910, 913 (ED Va. 1978), summarily aff'd, 609 F. 2d 508 (CA4 1979).

Amendment rights to assemble for peaceable political protest, to associate with others to engage in political expression, and to speak on public issues free of unreasonable government interference. The District Court found that the defendants had succeeded in diverting plaintiffs from, and impeding them in, their protest activities. The Court of Appeals for the District of Columbia Circuit held that that injury to a First Amendment-protected interest could itself constitute compensable injury wholly apart from any "emotional distress, humiliation and personal indignity, emotional pain, embarassment, fear, anxiety and anguish" suffered by plaintiffs. 237 U. S. App. D. C., at 280, 737 F. 2d, at 62 (footnotes omitted). The court warned, however, that that injury could be compensated with substantial damages only to the extent that it was "reasonably quantifiable"; damages should not be based on "the so-called inherent value of the rights violated." *Ibid.*

I believe that the *Hobson* court correctly stated the law. When a plaintiff is deprived, for example, of the opportunity to engage in a demonstration to express his political views, "[i]t is facile to suggest that no damage is done." *Dellums* v. *Powell,* 184 U. S. App. D. C. 275, 303, 566 F. 2d 167, 195 (1977). Loss of such an opportunity constitutes loss of First Amendment rights " 'in their most pristine and classic form.' " *Ibid.*, quoting *Edwards* v. *South Carolina,* 372 U. S. 229, 235 (1963). There is no reason why such an injury should not be compensable in damages. At the same time, however, the award must be proportional to the actual loss sustained.

The instructions given the jury in this case were improper because they did not require the jury to focus on the loss actually sustained by respondent. Rather, they invited the jury to base its award on speculation about "the importance of the right in our system of government" and "the role which this right has played in the history of our republic," guided only by the admonition that "[i]n one sense, no monetary value we place on Constitutional rights can measure their im-

portance in our society or compensate a citizen adequately for their deprivation." App. 96. These instructions invited the jury to speculate on matters wholly detached from the real injury occasioned respondent by the deprivation of the right. Further, the instructions might have led the jury to grant respondent damages based on the "abstract value" of the right to procedural due process—a course directly barred by our decision in *Carey*.

The Court therefore properly remands for a new trial on damages. I do not understand the Court, however, to hold that deprivations of constitutional rights can never themselves constitute compensable injuries. Such a rule would be inconsistent with the logic of *Carey*, and would defeat the purpose of § 1983 by denying compensation for genuine injuries caused by the deprivation of constitutional rights.