831 F.2d 1057
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Cynthia A. CASE, Plaintiff-Appellant,
v.
Calvin SMITH, Rebecca Hackney, Robert Martin, the Board of
Supervisors, William K. Stovall, Richard-Roe,
Defendant-Appellee.
 No. 86-3159.
 United States Court of Appeals, Fourth Circuit.
 Argued July 8, 1987.
Decided Oct. 16, 1987.
 
 Nelson R. Kieff (Guy Farley, Jr., Farley, Farley & Samuels, Jerry Phillips, Whitestone, Phillips, Brent, Young & Merril, P.C. on brief) for appellant.
 Joseph Peter Dyer, Jr. (Siciliano, Ellis, Dyer & Boccarosse on brief), Ara Louis Tramblian, Asst. Co. Atty. for appellee.
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-86-488A).
 E.D.Va.
 AFFIRMED.
 Before CHAPMAN and WILKINS, Circuit Judges and CLYDE H. HAMILTON, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This is a 42 U.S.C. Sec. 1983 action in which plaintiff alleged, inter alia, that her fourth, eighth, and fourteenth amendment rights were violated by an arrest without probable cause and an arrest accomplished by the use of excessive force. On appeal, Ms. Case asserts that the district court erred when it granted a directed verdict in favor of Arlington County and dismissed her claim for arrest without probable cause. Finding no error in the rulings of the district court, we affirm.
 
 FACTUAL BACKGROUND
 
 2
 On May 7, 1985, at approximately 12:45 O'Clock A.M., Officer Rebecca Hackney, of the Arlington County Police Department, was patrolling in her police cruiser when she spotted a # 'mane' standing near a service station. This service station had been recently robbed at knifepoint on numerous occasions. Officer Hackney passed the service station several times during the next hour or so and, on her fourth pass of the area, she observed the "man" apparently sharpening a "large" knife. She called her dispatcher, relayed this information, and then decided to stop and question the "man." The "man" was appellant, Cynthia A. Case, whose attire and appearance resembled a man. When Officer Hackney approached Ms. Case she ran off into some nearby woods. Officer Hackney returned to her cruiser and called for assistance. Officers Calvin Smith and Robert Martin each responded to the call. Officer Smith, who had apparently heard the dispatcher's earlier warning to be on the lookout for a man matching Ms. Case's description, arrived with a trained police dog. The dog, on a tracking leasb, tracked Ms. Case to the edge of the woods where something was then thrown from the woods at the officer and dog. Concerned that the suspect had a large knife, Officer Smith decided to release the dog and gave him the command "get-him." The dog then went into the woods and apprehended Ms. Case, biting her in the process. Officer Smith removed the dog from Ms. Case and she was subsequently arrested for carrying a concealed weapon in violation of Va. Code Sec. 18.2-308 (1982), a misdemeanor. This charge was subsequently nolle prossed. The knife taken from Ms. Case upon arrest turned out to be a pocketknife with a 2-1/2 to 3 inch blade.
 
 
 3
 Ms. Case brought suit under 42 U.S.C. Sec. 1983 alleging, inter alia, that her fourth, eighth, and fourteenth amendment rights were violated bv an arrest without probable cause and an arrest accomplished by the use of excessive force. At trial, she asserted that she was merely hitchhiking and was using the knife to cut a hole in a beer can in order to use it as a spittoon. She stated she ran from the police to avoid arrest for hitchhiking. She alleged Arlington County was liable because its police canine unit policy was unconstitutional in that it authorized the use of a trained dog to apprehend a fleeing suspect without regard to whether the person was a suspected misdemeanant or a dangerous felon. She also asserted that Officers Smith and Hackney arrested her without probable cause, with excessive force, and under the sham of a misdemeanor. At the close of plaintiff's evidence, Arlington County moved for and was granted a directed verdict. The court held that Arlington County's policy was constitutional. At the close of defendant's case, the court dismissed the claim for arrest without probable cause. This dismissal was premised upon plaintiff's coun.sel's representations to the court that plaintiff was not seeking any damages for an arrest without probable cause. These two rulings form the basis of the appeal. The court submitted the issue of excessive force to the jury, and it returned a verdict for plaintiff in the amount of three thousand dollars.
 
 
 4
 DISMISSAL OF THE CLAIM FOR ARREST WITHOUT PROBABLE CAUSE
 
 
 5
 The threshold issue is whether the district court erred when it construed representations of plaintiff's counsel as an abandonment of the claim for arrest without probable cause. Discussions concerning this issue arose three (3) times during the course of the trial: (1) during cross examination of the plaintiff, (2) during the defendants' motion for directed verdict, and (3) during the judge's review of the jury instructions. A review of plaintiff's counsel's representations to the trial judge reveals that counsel's representations were reasonably construed as an abandonment of all claims to proper damages concerning the arrest without probable cause.
 
 
 6
 The initial discussion of this matter occurred during the cross examination of the plaintiff. During this cross examination, defendants' counsel, in an effort to show that plaintiff was not significantly injured by her arrest, attempted to introduce evi.dence concerning several other arrests of plaintiff. Plaintiff objected to this line of questioning by referring to an earlier motion in limine and by arguing that such evidence was highly prejudicial and had no bearing on the case because "There is no claims [sic] for false arrest." Corrected Joint Appendix, p. 114, 1. 7 (emphasis added) (hereinafter C.J,A.).
 
 
 7
 A general review of the proceedings at this stage of the trial clearly reveals that plaintiff's counsel (Farley and Phillips) abandoned any claim for an arrest without probable cause:
 
 
 8
 THE COURT: I understand your position. Let me ask you gentlemen. Is there any allegation in this case that there are any damages resulting from either the arrest or that there was an unlawful arrest or that there was an unlawful detention associated with the time she spent in the Arlington County jail?
 
 MR. FARLEY: Her constitutional
 
 9
 MR. PHILLIPS: For damages, no. But her constitutional rights
 
 
 10
 THE COURT: Now, one of you are going to have to address it. Come to the podium.
 
 
 11
 MR. FARLEY: Your Honor, we addressed this issue on Friday. We made a motion in limine, although it is not reflected
 
 
 12
 THE COURT: Judge Bryan said we will take it up at the time of trial.
 
 
 13
 MR. FARLEY: Now, we let him know and we let Mr. Dyer know on the record that we were not claiming any ama e § for the actual incarceration or for the humiliation that someone may receive from an arrest. We are not claiming any reputation damage. We let him know that on Friday.
 
 
 14
 C.J.A., p. 120, 1. 9--p. 121, 1. 3 (emphasis added).
 
 
 15
 At this point, the trial judge stated his understanding of the matter to plaintiff's counsel, "You [plaintiff] are not asking for any damages." C.J.A., p. 121, 1. 8. Counsel remained unclear in stating his position, so the judge asked him directly if he intended to argue the arrest without probable cause issue to the jury. Counsel equivocated and finally stated "[W]e are not going to bring in any damages for the unconstitutional arrest." C.J.A., p. 1,92, 11. 13-14 (emphasis added).
 
 
 16
 The discussion continued and, in an effort to conclude the matter, plaintiff's counsel stated, "Your Honor, ... so that there will be no misunderstanding about our position, ... we are not contending any emotional damages or injuries that flow from the fact that she was arrested without probable cause." The judge replied, "I understand and I am going to instruct the jury that they are not to consider any." Plaintiff's counsel concluded, "But we are, Your Honor, going to ask for damages for her right to be free of excessive force during any type of arrest, whether lawful or not." C.J.A., p. 127, 11. 10-19. In view of the above exchanges, it was completely reasonable for the district court to assume that plaintiff was a.bandoning her entire claim for an arrest without probable cause.
 
 
 17
 Consequently, when this issue arose during the review of jury instructions, the district court refused to allow plaintiff's counsel to retract his earlier statements and dismissed the claim for arrest without probable cause:
 
 
 18
 Now, we had a discussion on the other motion, and I am not going to let counsel back off the representation which was made to me that there were going to be no damages requested for the unlawful arrest. That was clearly represented to me and I made rulings basedd on that representation, and that became the law ot this case.
 
 
 19
 So, as far as any kind of damages for an unlawful arrest, that is just not going to the jury. That has been determined.
 
 
 20
 C.J.A., p. 99, 11. 15-23 (emphasis added); See also C.J.A., p. 102, 11. 7-18.
 
 
 21
 As the testimony reflects, plaintiff's counsel made numerous representations to the court that plaintiff was seeking no damages for an alleged arrest without probable cause. The district court relied on these representations and refused to admit evidence of numerous other arrests of plaintiff as irrelevant to any claim remaining in the case. Under these circumstances, and because "it is improper to submit to the jury a theory of liability for which no relief is sought," the district court did not err when it dismissed plaintiff's claim for arrest without probable cause. Exxon Corp. v. Exxene Corp., 696 F.2d 544, 550 (7th Cir. 1982); See also 75 Am.Jur.2d Trial Sec. 649 (1974) (a trial judge does not err if he refuses to instruct on an issue or theory that has been taken out of the case).
 
 
 22
 Additionally, and assuming arguendo that the district court misconstrued the aforementioned remarks of plaintiff's counsel, the dismissal of the claim for arrest without probable cause was still proper in that the abstract value or importance of constitutional rights is not a permissible element of damages in a Sec. 1983.case. Memphis Community School District v. Stachura, ---U.S.---, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). In the instant case, after abandoning the claim for damages relating to an arrest without probable cause, plaintiff's counsel tried to resurrect the claim during arguments on the defendants' motions for directed verdicts. He argued that he was seeking to recover a nominal award for an arrest without probable cause, i.e. "whatever the jury feels [is merited for the deprivation] of one's rights." C.J.A., p. 144, 11. 8-9. However, when the district court inquired if plaintiff was seeking money damages, the plaintiff replied "A jury may award more than a nominal sum for deprivation of certain substantive constitutional rights ... independent of any recovery for actual and physical emotional injury." C.J.A., p. 145, 11. 9-14. Plaintiff's counsel unambiguously stated he was seeking damages just for the abstract value of the right to be free from arrest absent probable cause. He stated "I am going to argue [the arrest without probable cause) in the abstract. C.J.A., p. 147, 11. 4-5. 1,ater, during discussions concerning jury instructions, plaintiff's counsel stated that he wanted to ask the jury "whether or not they feel that [an arrest without probable cause] is something one should be compensated for." id. at 11. 13-14. The court refused to give such an instruction and plaintiff noted his exception on the record.[1]
 
 
 23
 Although plaintiff's counsel's representations to the court are not a model of clarity, it is reasonable to assume that plaintiff was asserting a claim for damages for the abstract value of the right to be free from arrest without probable cause. However, the abstract value of constitutional rights is not a permissible element of damages in a Sec. 1983 case. Stachura, supra. Consequently, !-n the circumstances of this case,the district court's dismissal of the claim for arrest without probable cause was correct as a matter of law. Id. The district court committed no error in dismissing the claim for arrest without probable cause and in refusing to instruct the jury that damages may be awarded solely for the abstract violation of a constitutional right.
 
 DIRECTED VERDICT IN FAVOR OF ARLINGTON COUNTY
 
 24
 "Whether a motion for directed verdict should have been granted is a question of law requiring de novo review on appeal." Gairola v. Com. of Va. Dept. of General Services, 753 F.2d 1281, 1285 (4th Cir. 1985) (Citations omitted). The court has applied the standard for a directed verdict articulated in Gairola, supral and concludes that the district court did not err when it directed a verdict in favor of Arlington County.
 
 
 25
 Under proper circumstances municipalities, such as Arlington County, may be liable under Sec. 1983 when its policies or customs cause a municipal employee to violate another person's constitutional rights. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, for a policy or custom to have caused the constitutional violation, it must have been the "moving force" behind the subsequent unconstitutional conduct. Monell, at 694, 98 S.Ct. at 2038, 56 L.Ed.2d at 638. "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." City of Oklaho Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, 804 (1985). Consequently, for Arlington County to have been subject to liability in this case, the plaintiff would have been required to produce evidence that: (1) custom or policy (2) of the municipality (3) caused (4) the pl.aintiff to be subjected to a deprivation of her constitutional rights. Monell, supra.
 
 
 26
 As stipulated at trial, the use of force and the police canine unit policies[2] were official policies of the municipality. The critical question is whether plaintiff put forth sufficient evidence to allow the jury to conclude that the custom or policies in question caused the deprivation of plaintiff's constitutional rights.
 
 
 27
 In deciding this matter, two issues must be explored: first, whether the county had a custom of using police dogs in a manner such as occurred in this case and second, whether the pertinent county policies were unconstitutional.
 
 
 28
 In the present case, there was no evidence that Arlington County had a custom, i.e., a persistent and widespread discriminatory practice of using the canines in a manner that would cause persons, such as plaintiff, to suffer a deprivation of their constitutional rights. Monell, 436 U.S. at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 635, (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142, 159 (1970)). Plaintiff produced no evidence of other attacks and consequently, no custom of the county was shown.[3]
 
 
 29
 As noted, plaintiff's evidence revealed only this one incident of alleged canine misuse. Therefore, under the circumstances of this case, Arlington County could have been subject to liability only if its policies regarding force and canine use were unconstitutional and caused the deprivation of plaintiff's constitutional rights. City of Oklahoma City v. Tuttle, 471 U.S. at 824, 105 S.Ct. at 2436, 85 L.Ed.2d at 804.
 
 
 30
 In Tuttle, when discussing the quantum of proof required to subject a municipality to Sec. 1983 liability the Supreme Court stated:
 
 
 31
 Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation.
 
 
 32
 Tuttle, 471 U.S. at 824, 105 S.Ct. at 2436, 85 L.Ed.2d at 804 (footnotes omitted).
 
 
 33
 In order for there to have been potential municipal liability in this case plaintiff was required to put forth evidence to prove either the county policies were unconstitutional or that more than one incident of a like nature had occurred. Id; See also Spell v. McDaniel, No. 85-1523, slip. op. at 15-16 (4th Cir. July 24, 1987).[4]
 
 
 34
 As the court in Spell noted, "In practice, ... 'policies unconstitutional in themselves' are understandably rare or at least rarely surface in litigation in this realm. 'Official' statements of law enforcement policy almost inevitably will specifically condemn rather than condone use of excessive force or other unconstitutional conduct by police." Spell, supra, slip. op. at 18. Having reviewed the applicable policies in their entirety, they cannot reasonably be construed to be "unconstitutional in themselves." They clearly limit the use of deadly force to the situation where either the officer's or a third party's life is in danger. Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1695, 85 L.Ed.2d 1 (1985). They also limit the use of non-deadly force to only such force as is reasonably necessary under the circumstances to effect an arrest. The court in Kidd v. O'Neil, 774 F.2d 1252 (4th Cir. 1985), stated, "the use of any significant force, up to and including deadlv force, not reasonably necessary to effect an arrest--as where the suspect neither resists nor flees or where force is used after a suspect's resistance has been overcome or his flight thwarted--would be constitutionally unreasonable." Kidd, 774 F.2d at 1256-1257 (emphasis added). In light of Kidd, and because the policies in this case restrict the use of deadly force to limited circumstances and also clearly restrict the use of non-deadly force to that reasonably necessary under the circumstances to effect an arrest, they are not "unconstitutional in themselves."
 
 
 35
 In summation, because the policies in this case are not unconstitutional, and because plaintiff put forth no evidence of other incidents of a like nature, the district court was correct when it directed the verdict in favor of Arlington County. City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Spell v. McDaniel, No. 85-1523, slip. op. at 15-16 (4th Cir. July 24, 1987); See also Kirkpatrick v. City of Los Angeles, 803 F.2d 485, 492 (9th Cir. 1986). There simply was not substantial evidence to support the verdict plaintiff asked of the jury. Gairola v. Commonwealth of Virginia, 753 F.2d 1281 (4th Cir. 1985).
 
 AFFIRMED
 
 
 [1]
 Plaintiff's counsel excepted by stating, "Your Honor, if that's your ruling, I would have to except to it. I think that we do have a count for the abstract violation or the violation of the abstract principle that somebody is entitled to be free from--" C.J.A., p. 160, 11. 7-10
 
 
 [2]
 The uncontradicted evidence establishes that the police canine unit policy vis-a-vis the use of force was subject to the police department's general guideli.nes concerning the use of deadly and non-deadly force
 
 
 [3]
 Compare Starstead v. City of Superior, 533 F.Supp. 1365 (W.D. 82) (five separate incidents-of misuse of police dogs were sufficient to allow an inference to be drawn that a municipal policy, in some form, was the motivating force behind the injuries suffered by the plaintiffs)
 
 
 [4]
 Even if a municipal policy is not "itself unconstitutional", municipal liability may still be imposed under the theories of deficient training policy or condoned custom or usage. Spell, at 18-25. Plaintiff has not asserted that eithe these theories of recovery are applicable in the present case