**JOHN P. WILDER**, Respondent–Appellant, v. **HARRY TANOUYE**, Unit Team Manager, Petitioner–Appellee

NO. 12166

(CIV. NO. 84–1466)

SEPTEMBER 22, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The Circuit Court of the First Circuit awarded Defendant Harry Tanouye summary judgment on Plaintiff John P. Wilder's complaint for damages premised on an alleged violation of his First Amendment rights. Finding "there [were] genuine issues of material fact regarding Wilder's § 1983 claim[,]" the Intermediate Court of Appeals (the ICA) vacated the judgment. Reviewing the record on appeal, we conclude the ICA erred and reinstate the judgment of the circuit court.

I.

John P. Wilder was an inmate of the Oahu Community Correctional Center (OCCC) in 1984. He was transferred out of the

general prison population on February 7, 1984 for breaching prison discipline. Four months later his request for reconsideration of the transfer was granted, and he was transferred from the OCCC holding unit to Module 3 where Harry Tanouye was the supervisor on August 9, 1984. Wilder's return to the prison's general population, however, was on a three–month probationary basis; it was conditioned, among other things, upon his "cooperation with staff—especially in remedying complaints informally by open communication with staff."

Wilder wrote Congressman Cecil Heftel on October 9, 1984, complaining about conditions at the prison. Several weeks later, Tanouye told Wilder this "appeared to be a breach" of one of the conditions of the latter's transfer to Module 3. Wilder then filed a grievance against Tanouye, claiming his constitutional right to write a congressman had been violated. Tanouye issued Wilder a written memorandum on the same day, advising him that writing the letter "without first attempting to resolve [the] complaint informally with staff" violated a condition of the probationary transfer and warning him that "further disciplinary action which may include an increase in custody and/or a change in housing[]" would follow if the violations continued.

Wilder filed his pro se complaint against Tanouye in the circuit court on November 7, 1984, alleging Tanouye, while acting "under color of Hawaii law," violated his "First and Fourteenth Amendment rights guaranteed by the Constitution," as well as the State Constitution. The complaint sought declaratory and injunctive relief and compensatory and punitive damages. Tanouye's responsive pleading raised as defenses the qualified immunity described in **Harlow v. Fitzgerald**, 457 U.S. 800 (1982), and the State's sovereign immunity.

Shortly after the complaint was filed, however, Tanouye rescinded the written warning issued earlier. The memorandum to Wilder stated: "This is to inform you that the written warning to you dated November 1, 1984, is rescinded. Copies of the warning

will be removed from the facility and module files." Wilder was transferred a few days later to a module supervised by someone else.

Tanouye moved for summary judgment on November 26, 1986, and the circuit court granted the motion on April 7, 1987. Wilder appealed, and the appeal was assigned to the ICA.

The ICA noted "Wilder's complaint [did] not mention 42 U.S.C. § 1983" but nevertheless "allege[d] that Tanouye, acting under the 'color of Hawaii law,' deprived him of his First and Fourteenth Amendment rights under the United States Constitution. Consequently, [it treated] Wilder's claim as a § 1983 claim." "Viewing the evidence in the record and inferences to be drawn therefrom in the light most favorable to Wilder," the ICA found "there [were] genuine issues of material fact" and ruled "the granting of summary judgment was improper." We granted Tanouye's application for a writ of certiorari in order to review the ICA's ruling in the light of the pronouncements of the Supreme Court regarding the viability of claims brought under 42 U.S.C. § 1983.

II.

Title 42 United States Code (U.S.C.) section 1983, which is "derived from § 1 of the Civil Rights Act of 1871, 17 Stat. 13, provides:

'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'"

*Carey v. Piphus*, 435 U.S. 247, 253 (1978). Its legislative history "demonstrates that it was intended to '[create] a species of tort

liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution. *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)." *Carey v. Piphus*, 435 U.S. at 253. Congress, in the Supreme Court's view, "adopted [the] common law system of recovery when it established liability for 'constitutional torts.'" *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (citations omitted).

"[T]he basic purpose of a § 1983 damages award [is] to compensate persons for injuries caused by the deprivation of constitutional rights[.]" *Carey v. Piphus*, 435 U.S. at 254. But "[r]ights, constitutional or otherwise, do not exist in a vacuum." *Id.* They "protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." *Id.* The concept of damages in Anglo–American law "reflects this view of legal rights." *Id.* And the Court on several occasions has said "damages are available under [section 1983] for actions 'found . . . to have been violative of . . . constitutional rights *and to have caused compensable injury* . . . .' *Wood v. Strickland*, 420 U.S. [308,] 319 [(1975)] (emphasis supplied)[.]" *Id.* at 255 (other citations omitted).

"*Carey v. Piphus* represent[ed] a straightforward application of these principles." *Memphis Community School Dist. v. Stachura*, 477 U.S. at 307. A section 1983 plaintiff, the Court ruled in reversing the Court of Appeals for the Seventh Circuit, "could recover . . . only if he proved actual injury caused by the denial of his constitutional rights." *Id.* "Where no injury was present, no 'compensatory' damages could be awarded." *Id.* at 308.

The instructions given the trial jury were at issue in *Memphis Community School District v. Stachura*. The jurors were instructed that in deciding what was required to compensate the plaintiff for the denial of his constitutional rights, "they should place a money value on the 'rights' themselves by considering such factors as the particular right's 'importance . . . in our system of government,' its role in American history, and its significance

... in the context of the activities in which [he] was engaged." *Id.*
*Carey v. Piphus*, the Court said, "establishes that such an approach
is impermissible." *Id.* For "[t]hese factors focus, not on compen-
sation for provable injury, but on the jury's subjective perception
of the importance of constitutional rights as an abstract matter."
*Id.* The conclusion reached in *Carey* that a section 1983 plaintiff
could recover only if he proved actual injury, the Court empha-
sized, "simply leaves no room for noncompensatory damages
measured by the jury's perception of the abstract 'importance' of a
constitutional right."[1] *Id.* at 309–10.

### III.

Wilder, as we noted, alleged that Tanouye deprived him of his
First and Fourteenth Amendment rights and sought declaratory

---

[1] The Court went on to say:

Nor do we find such damages necessary to vindicate the constitutional
rights that § 1983 protects. See n. 11, *supra.* Section 1983 presupposes that
damages that compensate for actual harm ordinarily suffice to deter constitu-
tional violations. *Carey*, [435 U.S.] at 256–257 ("To the extent that Congress
intended that awards under § 1983 should deter the deprivation of constitu-
tional rights, there is no evidence that it meant to establish a deterrent more
formidable than that inherent in the award of compensatory damages").
Moreover, damages based on the "value" of constitutional rights are an un-
wieldy tool for ensuring compliance with the Constitution. History and tradi-
tion do not afford any sound guidance concerning the precise value that juries
should place on constitutional protections. Accordingly, were such damages
available, juries would be free to award arbitrary amounts without any
evidentiary basis, or to use their unbounded discretion to punish unpopular
defendants. Cf. *Gertz*[ *v. Robert Welch, Inc.*,] 418 U.S.[ 323,] 350. Such
damages would be too uncertain to be of any great value to plaintiffs, and
would inject caprice into determinations of damages in § 1983 cases. We
therefore hold that damages based on the abstract "value" or "importance" of
constitutional rights are not a permissible element of compensatory damages
in such cases.

477 U.S. at 310.

and injunctive relief and compensatory and punitive damages. When Tanouye's motion for summary judgment was heard, Wilder's plea for declaratory and injunctive relief was not a viable request—the written warning had been rescinded and removed from the files, he was not subject to disciplinary action, and he had been transferred from the module supervised by Tanouye.

The ICA nonetheless concluded "Wilder's claim for money damages remains viable and is not moot[.]" It concluded Tanouye was not entitled to summary judgment because (1) Wilder's complaint "assert[ed] a substantive claim pursuant to the First Amendment as made applicable to the states by the Fourteenth Amendment[,]" (2) "Tanouye's contention that Wilder's transfer occurred after the filing of the complaint and was not an issue below is not entirely correct[,]" and (3) the "rescission of the 'warning' letter and removal of the copies of the letter from Wilder's institutional files—all of which occurred subsequently to the filing of Wilder's complaint—do not by themselves signify that there was no retaliation." Applying the principles reiterated by the Supreme Court in *Carey v. Piphus* and *Memphis Community School District v. Stachura* and other principles of the common law system of recovery relevant here, we conclude the ICA erred in vacating the award of summary judgment to Tanouye.

To begin, the assertion of "a substantive claim pursuant to the First Amendment" is not controlling for purposes of analyzing section 1983 claims. The respondent in *Memphis* argued the principles enunciated in *Carey* did not control his claim for damages because "a *substantive* constitutional right—respondent's First Amendment right to academic freedom—was infringed." *Memphis Community School Dist. v. Stachura*, 477 U.S. at 309 (emphasis in original). The Court summarily dismissed the argument, stating *Carey* did "not establish a two–tiered system of constitutional rights, with substantive rights afforded greater protection than 'mere' procedural safeguards." *Id.* And it "emphasized that, whatever the constitutional basis for § 1983 liability, such dam-

ages must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation.' [435 U.S.] at 265 (emphasis added)." *Id.* (footnote omitted).

Thus, the viability of Wilder's claim for compensatory damages turns on whether his First Amendment rights were violated and whether the violation resulted in compensable injury. Wilder was not prevented from writing Congressman Heftel; if a violation occurred, it was when Tanouye advised Wilder that the communication of complaints breached an agreed condition of his return to the prison's general population and warned him about further disciplinary action if this happened again. But "damages based on the 'value' or 'importance' of constitutional rights are not authorized by § 1983," 477 U.S. at 309 n.13, and Wilder's claim for compensatory damages was viable only if he could show he suffered actual injury. Viewing the evidence in the record and the inferences to be drawn therefrom in a light most favorable to him, we conclude the claim was not one that could be sustained.

The rescission of the written warning and its expungement from the records of the OCCC removed even the threat of retaliation the ICA spoke of in setting aside the summary judgment. Moreover, the transfer to a module supervised by someone other than Tanouye could hardly be deemed injurious to the prisoner's interests. Since damages based on the abstract importance of First Amendment rights are not awardable in a section 1983 suit, the defendant was entitled to summary judgment on the claim for compensatory damages.[2]

---

[2] The evidence in the record viewed in a light most favorable to the plaintiff also does not show the acts complained of were "maliciously, or wantonly, or oppressively done." *Memphis Community School Dist.*, 477 U.S. at 306 n.9; *see also Kang v. Harrington*, 59 Haw. 652, 660–61, 587 P.2d 285, 291 (1978). Thus, punitive damages were not awardable either.

The decision of the ICA is set aside, and the summary judgment in favor of the defendant is reinstated.

*John Campbell, Jr.*, *Glenn S. Grayson*, and *Steven S. Michaels*, Deputy Attorneys General, on the writ and brief for petitioner–appellee.

*John P. Wilder*, respondent–appellant, pro se.