**Louise K. NOLLEY, Plaintiff,**

**v.**

**COUNTY OF ERIE; Thomas Higgins, Sheriff; John Dray, Superintendent; and Jane O'Malley, Nurse, Defendants.**

**No. CIV–88–1170C.**

United States District Court, W.D. New York.

Sept. 3, 1992.

Damon & Morey (Jennifer Coleman, of counsel), Buffalo, N.Y., for plaintiff.

Patrick H. NeMoyer, Erie County Atty. (James L. Tuppen, Asst. Erie County Atty.

of counsel), Buffalo, N.Y., for defendants County of Erie, Thomas Higgins and Jane O'Malley.

David Gerald Jay, Buffalo, N.Y., for defendant John Dray.

CURTIN, District Judge.

On August 21, 1992, the court issued a decision awarding damages to the plaintiff. As part of the award, the court assessed punitive damage against defendant John Dray in the sum of $20,000.00.

Soon after the judgment was entered, the court had second thoughts about the suitability of that award and decided to reconsider the grant of punitive damages on its own motion. Several meetings were held with the attorneys for plaintiff and defendants, including David G. Jay, Esq., who has now appeared as personal attorney for John Dray.

After considering all of the facts and circumstances of this case, I conclude that the award of punitive damages was not warranted and should be set aside. In my original decision, I looked to the teaching of *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983), in which the Supreme Court said:

> We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

In 1986, the Supreme Court held in *Memphis Community School District v. Stachura*, 477 U.S. 299, 306 n. 9, 106 S.Ct. 2537, 2542 n. 9, 91 L.Ed.2d 249 (1986), as follows: "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *See also Vasbinder v. Ambach*, 926 F.2d 1333, 1342 (2d Cir.1991).

Without question, Mr. Dray acted deliberately and over some period of time. I cannot find, however, that he acted maliciously or with callous indifference. He willfully followed the course of conduct described in the order; but upon further consideration, I cannot find that his conduct was reckless. Although well-intentioned, his actions were contrary to law but not sufficiently egregious to warrant the grant of punitive damage.

One of the purposes of the award of punitive damage is to deter others from similar behavior. After meeting with counsel and upon further reflection, I find that there is a more efficient way to deter future conduct other than the grant of a money award. The attorneys have jointly suggested several steps which may be taken to deter future conduct in lieu of a punitive award. The withdrawal of the punitive damage award is not opposed by plaintiff. In fact, plaintiff and her attorney joined with the defendants in urging that the plan which will be described in this order be adopted by the court.

In my original decision, I did not issue an injunction because of the representations made by Sheriff Higgins as to the steps which would be taken to do away with the objectional procedures. However, because of the importance of the issues, court supervision for a limited time is appropriate. The court has discussed carefully the following direction, and all involved agree that the following plan of supervision shall be made part of the order.

Defendants, by affidavits on personal knowledge of officials of the Erie County Sheriff's Department ("ECSD") and the ECHC, shall make a written report to the court on or about October 14, 1992, with respect to the steps taken by defendants to comply with the letter and the spirit of the court's October 31, 1991, Decision and Order. Said report shall include:

1. The status of defendants' red sticker and segregation policies;

2. Defendants' policies with respect to inmate intake and medical screening, classification/housing decisions, and access to ECHC programs (*i.e.*, library, law library, recreation, visitation, religious services, educational services, etc.) for HIV-infected inmates;

3. Defendants' policies with respect to the confidentiality of HIV-related information;

4. Defendants' policies with respect to the provision to ECHC inmates of information on HIV testing and avoidance of HIV transmission; and

5. Defendants' policies with respect to the training of ECSD and ECHC personnel regarding infectious/contagious disease control, the employment of universal blood and body fluid precautions, and their duty to avoid unauthorized disclosures of confidential HIV-related information.

In addition, defendants shall prepare and file with the court, on or about June 15, 1993, a subsequent report with respect to each of the subjects previously reported upon. Said subsequent report shall include:

1. The number, according to ECHC Medical Department records, of HIV-infected inmates confined in the ECHC during the period from October 15, 1992 to April 15, 1993;

2. The number, according to ECHC Medical Department records, of HIV antibody tests ordered by ECHC physicians for ECHC inmates during the period from October 15, 1992 to April 15, 1993;

3. The number, according to ECHC Medical Department records, of ECMC Immunodeficiency Clinic appointments scheduled for ECHC inmates during the period from October 15, 1992, to April 15, 1993;

4. The extent to which defendants' personnel have received classroom training concerning infectious/contagious disease control, employment of universal blood, and body fluid precautions, and their duty to avoid unauthorized disclosures of confidential HIV-related information;

5. Any changes made subsequent to October 14, 1992 in defendants' policies concerning inmate intake and medical screening, classification/housing decisions, and access to ECHC programs for HIV-infected inmates;

6. Any changes made subsequent to October 14, 1992, in defendants' policies concerning the confidentiality of HIV-related information;

7. Any changes made subsequent to October 14, 1992, in defendants' policies concerning the provision to ECHC inmates of information on HIV testing and avoidance of HIV transmission;

8. Any changes made subsequent to October 14, 1992, in defendants' policies concerning the training of ECSD and ECHC personnel regarding infectious/contagious disease control, the employment of universal blood and body fluid precautions and their duty to avoid unauthorized disclosures of confidential HIV-related information; and

9. A summary of complaints received by the Erie County Holding Center ("ECHC") Medical Department and/or Administration from ECHC inmates with respect to disclosure of HIV-related information or treatment of HIV-infected inmates at the ECHC during the period from October 15, 1992, to April 15, 1993.

A meeting shall be held with counsel on July 9, 1993, at 9 a.m. to discuss the report of June 15, 1993.

So ordered.