**Governor Joan FINNEY and Richard Finney, Plaintiffs,**

v.

**Officer Kristen METZGER; Officer Wally Roberts; Officer Travis Crickenberger; Officer Rob Wilson; and Officer George Henley, Defendants.**

**No. 99–4144–RDR.**

United States District Court,
D. Kansas.

Nov. 16, 2001.

Lee R. Barnett, Keith E. Renner, Barnett & Renner, PA, Auburn, KS, for plaintiffs.

Mary B. Mudrick, Office of City Attorney, Topeka, KS, David D. Plinsky, Office of United States Attorney, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon defendants' motion for summary judgment. This is an action under 42 U.S.C. § 1983 alleging that defendant police officers violated plaintiffs' rights under the Fourth Amendment.

The following facts either are uncontroverted or shall be considered true solely for the purposes of the instant motion. The events which form the core of this lawsuit occurred in the evening of September 27, 1997 at 4519 S.W. 33rd Terrace in Topeka, Kansas. On that day, William Chester, a white male with dark hair, stopped by an apartment at that address to visit plaintiff Richard Finney. The apartment belonged to plaintiff Joan Finney and her husband Spencer Finney. Joan Finney, who died since the filing of this lawsuit, was once Governor of the State of Kansas.[1] Richard Finney, her adult son, lived at the apartment. Richard Finney did not answer the door, so Chester walked around to the back, but the gate was locked. Chester then returned to the front door, knocked, but again no one came to the door. Chester went to a

nearby convenience store, called Richard Finney and then returned to the apartment. Finney was in the shower, so Chester had to sit on the front porch until Finney opened the front door and let Chester enter.

As Chester was waiting outside the apartment, he saw a group of teenagers in the area. After Chester entered, he spread out a number of papers and magazines relating to the restoration of motor vehicles. He could be seen through the back patio door of the apartment sitting on the floor among these papers.

At about 7:44 p.m., the Shawnee County Consolidated Emergency Communications Center received a 911 call from an anonymous caller who said she lived at 4511 S.W. 33rd Terrace. The caller reported a "weird guy" hanging around the apartments. She said he had knocked on the "ex-governor's house, Joan Finney's apartment" and that no one answered; "he came back, he walked to the Kwik Shop, he came back ... now he is up at the door knocking again." She stated that the man went into the house but she didn't know if someone let him in. She also stated that she wasn't accusing the person and that it wasn't an emergency. The dispatcher radioed a suspicious person call. The dispatcher stated: "A guy keeps coming around that area and knocking at Governor Joan Finney's house" and that he was now inside but it was uncertain if he had a key or if someone let him inside.

Defendant Topeka Police Officers Kristen Metzger and Wally Roberts took the call from the dispatcher at about 7:50 p.m. They arrived at the Finney apartment at approximately 7:55 p.m. in separate cars. They looked inside a front window and did not see anything, so they went behind the

---

1. Counsel should consider filing a motion for substitution under FED.R.CIV.P. 25, or at least a formal suggestion of death.

apartment. Peering through the back fence, they could see Chester on the floor with papers strewn around him. Officer Roberts then returned to the front door of the Finney apartment, knocked, and announced that he was a police officer.

Richard Finney heard the knock and went to the kitchen window to see who was at the front door. Chester told him he thought it could have been the teenagers he had seen around the apartment. Finney asked to see the officer's badge, but Officer Roberts either did not hear this or decided not to show his badge. Finney then headed toward the back door to go outside and investigate. The record is disputed as to whether Finney ran or hurried or walked toward the back door.

Officer Roberts radioed to Officer Metzger, who was still in the alley behind the apartment, that a person was moving toward the back. Roberts also radioed the dispatcher to start a backup car. The request for a backup car was received at 7:59 p.m. Roberts then ran from the front to the back of the apartment. Finney said some words to Chester, picked up the stick used to block the sliding glass patio door of the apartment, and headed toward the back fence of the apartment.

When Finney opened the gate to the fence in back of the apartment, he was met by Officer Metzger and Officer Roberts with their guns drawn.[2] Officer Metzger then placed her gun in her holster and put handcuffs on Finney. The officers told Finney they were investigating a possible burglary. Finney told the officers who he was and that he lived at the apartment.[3] He showed a photo identification card to Officer Metzger which she used to obtain an NCIC report. The report was clean. This report came back at 8:04 p.m.

Before Metzger received Finney's identification and obtained the NCIC report, Officer Roberts proceeded toward the sliding glass patio door to check on the person inside the house. At approximately 8:02 p.m., defendant Officers Rob Wilson and George Henley arrived at the scene. Officer Wilson reported to the alley where Officer Metzger was holding a handcuffed Richard Finney. Officer Henley reported to the apartment to assist Officer Roberts and arrived there only seconds after Roberts entered the apartment. Chester unlocked the door to allow Officer Roberts in the house. The officers asked for and received Chester's identification.

Finney was upset. He cursed and yelled. Officer Metzger asked Officer Wilson to continue watching Finney while she went inside the house to check on Officer Roberts. Officer Wilson ordered Finney to sit down. About this time, Finney made a move toward the apartment, but Wilson and Metzger grabbed Finney and told him to sit down. Finney calmed down after a few minutes and smoked a cigarette.

Officer Henley was instructed to watch Chester inside the apartment while Officer Roberts looked through the dwelling. Officer Roberts looked upstairs, downstairs and on the main floor. Officer Henley's time record indicates that he was at the scene for a total of 17 minutes.

Defendant Officer Travis Crickenberger arrived at the scene also at approximately 8:02 p.m. to provide further support for the officers. He stayed in the alley the entire time he was there. During that time, Richard Finney was sitting near the fence in the alley. When Officer Roberts and Officer Metzger came out of the apartment, they explained to Richard Finney

---

**2.** Officer Roberts has stated that he arrived after Finney was met by Officer Metzger and that he drew his gun while she handcuffed Finney.

**3.** Officer Roberts has stated that he proceeded to check on the person in the apartment before Finney identified himself.

what was happening and that they were investigating a possible burglary in progress. They removed the handcuffs approximately five minutes before they left, according to plaintiff's rough estimate. All the officers left the scene by 8:27 p.m.

One officer forced Richard Finney to sit or lay down in the alley by throwing or pushing him to the ground.[4] Finney was not injured by any of the defendants' actions.

Joan Finney was not at the apartment on September 27, 1997. She did not learn what happened until September 30, 1997.

Summary judgment standards

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden to "demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.) cert. denied, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). The court reviews the evidence and draws all reasonable inferences in the light most favorable to the nonmovant. *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995). Summary judgment shall be granted unless there is evidence upon which a reasonable jury could find for the nonmovant. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995) cert. denied, 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995).

When, as in the instant case, an issue of qualified immunity is raised on summary judgment, the court must determine whether the plaintiff has satisfied a "heavy" two-part burden: 1) showing the defendant's actions violated a constitutional or statutory right; and 2) showing that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Gross v. Pirtle*, 245 F.3d 1151, 1155–56 (10th Cir.2001). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Id.* at 1156 (quoting, *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

Disputed facts

In light of the arguments for summary judgment, the following factual issues which are in dispute are important to the court's findings. From the court's review of the record, there appears to be a dispute regarding whether Richard Finney walked or hurried or ran to the back of the house after Officer Roberts knocked on the front door. It appears disputed whether the officers could see how Finney moved to the back of the house and whether Officer Metzger could determine whether Finney and Chester appeared alarmed. What Finney told the officers and when he said it is at issue. The exact amount of time the officers spent inside the home and the time Finney spent in handcuffs appears disputed. The time when Officer Roberts learned Finney's name is unclear. The scope of the search inside the home is also in dispute.

Many legal arguments are presented in the motion for summary judgment. As is noted in the motion for summary judgment, this matter is complicated by the fact that there are two plaintiffs with dif-

---

4. The defendants deny that this happened.

ferent roles in the events of the case and five defendants with different roles.

### Punitive damages

 The first argument listed in defendants' motion calls for striking plaintiffs' prayer for punitive damages. Three grounds for doing so are advanced. First, defendants assert that plaintiff Joan Finney's motivation for bringing this suit invalidates any claim she might have for punitive damages. Her comments in her deposition disavowed a desire to punish defendants or enmity toward defendants. Instead, she indicated a desire to improve the training of police officers. The standard for obtaining punitive damages is based upon the conduct of the defendants, not upon the motivation of the plaintiffs. See *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (in a § 1983 action, a finding of punitive damages requires that the defendant's conduct "is shown to be motivated by evil motive or intent," or "involves reckless or callous indifference to the federally protected rights of others"). Accordingly, the court rejects the first grounds offered for striking the claim for punitive damages.

Defendants' second argument against punitive damages asserts that their conduct in this matter was not so reckless or malicious as to convince a reasonable person that punitive damages were warranted. Given the numerous factual disputes in this matter, summary judgment would not be appropriate as to all defendants on the punitive damages claims. However, as explained in this opinion, the court finds no adequate grounds for any claim of damages against defendants Crickenberger, Wilson and Henley on the record before the court.

Defendants' final argument against punitive damages contends that they have been sued only in their official capacities and, therefore, cannot be liable for punitive damages as surrogates of the state. We believe a fair reading of the complaints as well as the final pretrial order, which governs the contentions of the parties after its entry, indicates that defendants are being sued in their individual capacities.

### Abstract value of Fourth Amendment rights

 Defendants' next argument is that any claim for damages for the abstract value of plaintiffs' Fourth Amendment rights should be denied. This is the law. "[T]he abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). However, this does not preclude an award of nominal damages. *Id.* at 308 n. 11, 106 S.Ct. 2537. The controversial part of defendants' argument is whether plaintiffs' claims for damages should be construed as limited to the abstract value of plaintiffs' Fourth Amendment rights. Once again, upon inspection of the pretrial order in this case, we do not believe the claims for damages can be so limited.

### Standing

Defendants contend that plaintiff Joan Finney did not have standing to make a claim for damages for any person other than herself. There is no dispute on this point.

### Initial detention

Defendants assert that plaintiff Richard Finney was reasonably detained for a short time during the investigation and "protective sweep." Defendants contend that in the rush of events after receiving a telephone call reporting suspicious activity at the apartment, knocking on the front door of the apartment and seeing a person inside walk (or move rapidly) to the back door rather than respond to the knock, the officers had sufficient grounds to stop Richard Finney as he exited the back yard of the apartment. Plaintiffs disagree, con-

tending that defendants reacted improperly to an uncorroborated anonymous telephone call. See *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (anonymous tip that a black male wearing a plaid shirt standing at a bus stop is carrying a gun is not sufficient to justify a Terry stop and frisk).

■ Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police officers may make brief, investigatory stops when they have a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* There must be more than an unparticularized suspicion or hunch. *Id.* at 124, 120 S.Ct. 673.

■ The Court in Terry recognized that such stops were a serious intrusion which could provoke humiliation and resentment. 392 U.S. at 17, 88 S.Ct. 1868. Hence, the scope of an investigatory stop must be reasonably related to the suspicious circumstances which justified the stop in the first place. *U.S. v. Merkley*, 988 F.2d 1062, 1063 (10th Cir.1993) (quoting *Terry*, 392 U.S. at 20, 88 S.Ct. 1868).

■ We find that exiting the back door of a residence ostensibly belonging to Joan Finney and her husband in reaction to the knocking of a police officer on the front door, under the other circumstances in this case, raised a sufficient suspicion of criminal activity to warrant the initial detention of Richard Finney. See *Wardlow*, 528 U.S. at 124, 120 S.Ct. 673 (headlong flight is suggestive of wrongdoing and helps supply reasonable suspicion supporting an investigative stop); *U.S. v. Meindl*, 83 F.Supp.2d 1207, 1223 n. 7 (D.Kan.1999) citing *U.S. v. Silva*, 957 F.2d 157, 160 (5th Cir.1992) (perceived attempts at evasion justify a brief investigative stop). The reasonable perception of flight distinguishes this case from Florida v. J.L., where there was an anonymous tip without additional suspicious circumstances.

■ Accordingly, we grant summary judgment against plaintiffs as to any claim regarding the initial detention of Richard Finney because we do not believe his constitutional rights were violated. But, even if his initial detention did violate his rights, we do not believe a reasonable officer would understand that detaining Finney initially would violate the Constitution. Accordingly, qualified immunity applies as well as a defense against this claim.

Detention after identification

After Richard Finney identified himself, issues remain as to whether his continued seizure and the entry of the Finney apartment violated the Fourth Amendment. These issues include: whether exigent circumstances existed which justified the entry and "protective sweep" (defendants' phrase) or "search" (plaintiffs' phrase) once inside; and whether a reasonable suspicion remained to detain him.[5]

5. Plaintiffs contend that the entry of the officers into the Finney apartment was not a protective sweep because it was not done in conjunction with an arrest. See *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (describing a "protective sweep" as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or oth-

ers"). While plaintiffs' definition of "protective sweep" may be correct, the alleged mischaracterization of the officers' action does not mean that exigent circumstances did not justify the action. See *U.S. v. Furrow*, 229 F.3d 805, 811–12 (9th Cir.2000) (describing protective sweep and exigent circumstances

 The court understands that in determining whether police conduct during an investigatory stop is reasonable, a court "should take care to consider whether police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Still, the length of detention may not last "longer than necessary to confirm or dispel [the officers'] suspicions regarding" the criminal activity for which the investigative stop was initiated. *U.S. v. Soto–Cervantes*, 138 F.3d 1319, 1323 (10th Cir.) cert. denied, 525 U.S. 853, 119 S.Ct. 131 (1998). Nor may a police officer arrest or detain someone merely for being obnoxious or uncooperative. Cf. *City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (invalidating city ordinance which made it a crime to verbally criticize or challenge police officers).

 While the Fourth Amendment's protections against unreasonable search and seizure are at issue here, the above-described disputed facts are sufficient to prevent the court from rendering a judgment that those rights were not violated or that a reasonable officer could have believed they were not violated. Therefore, the court shall deny defendants' motion for summary judgment as to the conduct of defendants Metzger and Roberts in holding Richard Finney and entering the Finney apartment after Richard Finney identified himself to the officers.

### Use of force

Defendants assert that summary judgment should be granted against plaintiff Richard Finney's claims that certain defendants exerted excessive force against him. Only plaintiff Richard Finney is bringing an excessive force claim and, from our reading of the pretrial order, this claim appears to be limited to the contention that defendant Crickenberger pushed him to the ground. (Doc. No. 42 at p. 9.)

 A claim of excessive force is analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The reasonableness of an officer's conduct must be assessed 'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions." *Gross*, 245 F.3d at 1158 (quoting *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865). Courts should examine such factual circumstances as: the crime's severity; the potential threat posed by the suspect to the officer or others; and the suspect's attempts to resist or evade arrest or detention. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

Although plaintiffs do not appear to be arguing that the use of handcuffs constituted excessive force, we would note that "[n]umerous cases have held that a police officer's use of handcuffs can be a reasonable precaution during a Terry stop." *United States v. Miller*, 974 F.2d 953, 956 (8th Cir.1992). See also, *U.S. v. Shareef*, 100 F.3d 1491, 1506 (10th Cir.1996) (officers entitled to handcuff and pat down suspects during a Terry stop). In this case, Richard Finney was handcuffed for a relatively short period of time, less than 25 minutes.

 Examining the factors listed in *Graham*, we find that the officers were engaged in investigating a suspected burglary in progress or suspicious person, incidents where there is some potential for

as related but separate justifications for warrantless searches).

danger. The officers believed more than one person might be involved in the crime they were investigating. They were faced with some minor, but loud, verbal as well as physical resistance from Mr. Finney, who could reasonably be suspected of trying to evade the officers at the outset of the investigation. No physical injury was suffered by Mr. Finney as a result of defendants' actions. No claim for mental or emotional distress is being advanced. In light of all these factors and viewing the record in a light most favorable to plaintiffs, the court does not believe excessive force was used or, at the very least, a reasonable officer would be entitled to believe excessive force was not applied and, therefore, is protected from liability under the qualified immunity doctrine. See *Gross*, 245 F.3d at 1158 (summary judgment proper against excessive force claim alleging that officer kicked plaintiff's foot very hard during an arrest); *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir.1997) (qualified immunity applied where officers slammed plaintiff to wall and kicked his legs apart while detaining him on suspicion of harassing a woman, although minor medical treatment was needed after the incident); *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir.1995) (shoving detainee to the floor and handcuffing her was not excessive force as officers entered a bonding establishment to effect the arrest of the owner); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (same holding in case involving a push into a wall and a chokehold of a suspect); *Stachel v. City of Cape Canaveral*, 51 F.Supp.2d 1326, 1331–32 (M.D.Fla. 1999) (same holding in case where plaintiff's arms were grabbed by larger men who forced her to her knees on a concrete floor and then handcuffed her). See also, *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001) ("qualified immunity ... protects officers from the sometimes hazy border between excessive and acceptable force." (citation omitted)).

### Entry of the apartment

■ Next, defendants contend that the entry into the apartment was reasonable under the "exigent" circumstances which existed. This is a fact-intensive inquiry. Reading the record in a light most favorable to the nonmovants, defendants Roberts and Metzger entered the apartment even though they knew they were holding a resident of the apartment who had just exited the residence and denied that any criminal activity was afoot. It is not clear on this record that Roberts and Metzger had a good basis, prior or after entering the apartment, to believe that reasonable cause supported a warrantless search. Accordingly, while the court does not foreclose the possibility that qualified immunity may still be justified when the factual picture is clarified, at this point the court shall deny summary judgment upon the claim of illegal entry and search as to defendants Roberts and Metzger.

### Pulling a weapon

There appears to be no dispute by the parties that the drawing of weapons by Metzger and Roberts for a brief period did not violate plaintiffs' rights. Summary judgment shall be granted against any such claim in this case.

### Reliance upon an anonymous informant

■ The court agrees that defendants may not be found liable for relying in part upon an anonymous informant for proceeding as they did in this case. The issue in this case is whether the officers violated the rights of the plaintiffs in light of all the information available to them at the time, including that provided by the anonymous informant. Even if the facts of this case were sufficiently similar to those in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) to be controlled by the

holding in that case, at the time of the incident in the case at bar, the law was sufficiently unsettled that the officers did not violate clearly-established law and are entitled to qualified immunity for initially acting upon the tip of the anonymous informant. See *Kerman v. City of New York*, 261 F.3d 229, 237 (2nd Cir.2001) (sustaining summary judgment on qualified immunity grounds where officers acted upon an anonymous phone call to enter the plaintiff's apartment).

**Defendants Wilson, Henley and Crickenberger**

 Defendants Wilson, Henley and Crickenberger arrived at the Finney apartment after Mr. Finney had been detained and handcuffed. Defendant Henley entered the Finney apartment after defendant Roberts made his entrance and acted as backup for Roberts. Henley did not otherwise participate in the "protective sweep" or "search." None of these defendants saw Mr. Finney's identification. They heard the dispatcher and radio traffic regarding a suspicious person at the apartment and a person going out the back door in response to Officer Roberts at the front door. They witnessed Mr. Finney's vituperation and agitation in response to being handcuffed and detained. These officers acted reasonably in response to the situation they faced. They were entitled to rely upon previous actions and judgments of Officers Metzger and Roberts. As the Tenth Circuit stated in *Oliver v. Woods*, 209 F.3d 1179, 1190–91 (10th Cir. 2000):

> Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention or probable cause to arrest. [Citations omitted]. As the Supreme Court noted in *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985):

> "[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and ... officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information."

*Id.* at 231, 105 S.Ct. 675, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (quoting *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir.1976)).

The Tenth Circuit further cautioned that such reliance must be objectively reasonable. 209 F.3d at 1191. In this case, we believe the undisputed facts clearly demonstrate that defendants Wilson, Henley and Crickenberger did rely reasonably upon their fellow officers in light of the information presented to them.

Accordingly, summary judgment shall be granted in favor of these defendants against all claims.

**Conclusion**

The court believes the above-stated discussion answers the many arguments presented by defendants in the instant motion for summary judgment. The court shall not grant summary judgment as to plaintiffs' actual and punitive damages claims against defendants Metzger and Roberts regarding Ronald Finney's detention and the "search" of the Finney apartment after Finney identified himself to defendants Metzger and Roberts. The court shall grant summary judgment against plaintiffs' other claims, including all claims against defendants Wilson, Henley and Crickenberger, in accordance with this memorandum and order.

**IT IS SO ORDERED.**